UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LINDA GAIL ANDERSON | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-00024 |
| | ) | Judge Trauger |
| WAL-MART STORES, INC. | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM

The defendant has filed a Motion for Summary Judgment (Docket No. 12), to which the plaintiff has responded (Docket No. 24), and the defendant has replied (Docket No. 27). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Linda Anderson was employed as a cashier by defendant Wal-Mart Stores, Inc. at its store in Pulaski, Tennessee.[1] The events leading to this litigation took place at the Pulaski

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Complaint (Docket No. 1, Ex. B), Defendant's Memorandum in Support of Summary Judgment (Docket No. 13), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 24), and Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket No. 25) in accordance with the court's task in analyzing a motion for summary judgment to determine whether the "nonmoving party [has] come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis added)); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. App., p. 626 (the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Where the plaintiff's proof does not adequately rebut the proof provided by the defendant, the court so notes this deficiency by adopting the defendant's fact and citing to the defendant's pleading, affidavit, or other document. However, where the plaintiff has admitted a fact alleged by the defendant, the court merely draws this fact from the plaintiff's admission, and does not cite to the defendant's pleading,

1

Wal-Mart store on December 22, 2003. That morning, another Wal-Mart employee, Jackie Stevens, was working at one of the defendant's cash registers. The defendant alleges that, at around 7:00 a.m., Ms. Stevens counted $500 in $20 bills from her till[2] and placed them in the bottom of the cash register drawer. The plaintiff then took over the cash register from Stevens and placed her till over the money. The defendant alleges that, during the plaintiff's shift, the plaintiff removed her till from the register and took the money. The plaintiff denies taking the money.

On the same day, an employee from the defendant's In-Store Loss Prevention Department, Phillip Belew, viewed video surveillance footage of the alleged incident, which the defendant claims shows the plaintiff taking the money from the drawer. The plaintiff asserts that this video in unclear and grainy and that it is impossible to tell from the video who, if anyone, took the money. The defendant alleges that an audit of the plaintiff's register for the relevant time period shows a $500 shortage. The plaintiff denies this shortage and asserts that there was actually a $30 overage. On January 9, 2004, the defendant met with the plaintiff to discuss the putative theft. The plaintiff denied any wrongdoing and was subsequently terminated from her position and instructed not to reenter the defendant's property. On the same day, the defendant turned over the evidence of this investigation to Detective Joel Robinson of the Pulaski Police Department.

On January 12, 2004, the plaintiff met Robinson at the police station to discuss the

---

affidavit, or other document.

[2]The "till" is the drawer or tray of the cash register with separate areas for bills and change.

incident. Robinson claims that, at this meeting, the plaintiff neither admitted nor denied the allegations. The two met again on January 30, 2004 to view the video surveillance footage. After viewing the videotape and denying wrongdoing a second time, the plaintiff was placed under arrest and charged with felony theft of property. The case proceeded to the grand jury on February 19, 2004. The plaintiff waived her right to a preliminary hearing and the case was set for trial in July 2004. The case was continued several times because, the defendant alleges, Detective Robinson was out of the country[3]. The plaintiff has not provided an alternative rationale for the continuances. On May 11, 2005, the charges were retired for one year[4] and, on June 8, 2006, a formal order was entered dismissing all charges against the plaintiff and expunging her criminal record.

On February 23, 2007, the plaintiff brought this action in the Circuit Court for Giles County, Tennessee against the defendant, alleging (1) false arrest and (2) malicious prosecution. (Docket No. 1, Ex. 2). On April 12, 2007, the defendant timely removed this action to this court pursuant to 28 U.S.C. § 1441. (Docket No. 1) On December 20, 2007, the defendant moved for summary judgment on the plaintiff's two claims. (Docket No. 12)

## ANALYSIS

**I.       Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3]According to his affidavit, Detective Robinson was unavailable to testify because he was "deployed to the Middle East." (Docket No. 16 at ¶ 17)

[4]The defendants allege that the District Attorney retired the charges because Detective Robinson was not available to testify. (Docket No. 13 at p. 4)

3

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative,"

4

or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.   Malicious Prosecution

The plaintiff has admitted that her false arrest claim is barred by the applicable statute of limitations (Docket No. 24 at p. 4.); accordingly, the plaintiff's only remaining claim is for malicious prosecution. The defendant alleges that the plaintiff's malicious prosecution claim is barred by the applicable statute of limitations and that the plaintiff has failed to establish the three elements of a malicious prosecution suit.

### A.   Statute of Limitations

Under Tennessee law, an action for malicious prosecution must be commenced within one year after the cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(1). "A cause of action for malicious prosecution accrues when a malicious suit is finally terminated in the defendant's favor." *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992). Accordingly, whether or not the plaintiff's action is barred by the statute of limitations turns on whether, and at what time, the prosecution was finally terminated in her favor.

The parties disagree as to what stage of the plaintiff's criminal prosecution constituted a "final and favorable termination." The defendant asserts that this date was May 11, 2005, which is referred to in the record as both the "diversion date" (Docket No. 24, Ex. 1) and the date on which the judge "retired" the charges against the plaintiff. (Docket No. 26 at ¶ 9) The plaintiff argues that the "final termination" did not occur until June 8, 2006, when the plaintiff's criminal

5

record was officially expunged and the theft charges were formally dismissed. (Docket No. 24, Ex. 1) Since this action was filed on February 23, 2007, only the plaintiff's proposed "final termination" date would prevent the statute of limitations from having run; under the defendant's proposed date, the malicious prosecution claim is time-barred.

The "final and favorable" inquiry has a dual role: it starts the tolling of the statute of limitations and it is an element of the claim itself. *See Christian v. Lapidus*, 833 S.W.2d at 73 (noting that a "final and favorable termination" both satisfies the third element of a malicious prosecution claim and commences the running of the one-year statute of limitations). This determination consists of two distinct components, a "finality" component and a "favorable" component. *Id.* at 73-74. The "finality" component ensures that the "plaintiff in the original action has had an opportunity to establish probable cause for commencing suit before being called upon to defend a counterclaim for malicious prosecution." *Id.* In the criminal context, a prosecution is deemed finally terminated if "the particular prosecution [has] been disposed of in such manner that it cannot be revived." *Scheibler v. Steinburg*, 167 S.W. 866, 866 (Tenn. 1914). However, the Tennessee Supreme Court has held that the possibility that a prosecution may be reopened does not preclude a finding of finality. *Christian*, 833 S.W.2d at 74. Rather, "[w]hether a suit has been finally terminated must be determined from existing facts, not from speculation or conjecture." *Id.*

The "favorable" component of the inquiry is required because "a judgment in favor of the original plaintiff is conclusive of probable cause, unless procured by fraud." *Christian*, 833 S.W.3d at 74. The Tennessee Supreme Court has adopted the approach, in determining what constitutes "favorable", that "abandonment or withdrawal of an allegedly malicious prosecution

6

is sufficient to establish a final and favorable termination so long as such abandonment or withdrawal was not accompanied by a compromise or settlement, or accomplished in order to refile the action another forum." *Id*. The Court later clarified this approach, noting that not just *"any* outcome . . . favorable to the original defendant will support the favorable termination element." *Parrish v. Marquis*, 172 S.W.3d 526, 533 (Tenn. 2005). Rather, the termination "must also reflect the merits and not merely a procedural victory." *Id.* at 531. "If a court concludes that 'the termination does not relate to the merits-reflecting on neither innocence of nor responsibility for the alleged misconduct-the termination is not favorable in the sense that it would support a subsequent action for malicious prosecution." *Id.* (citing *Lackner v. LaCroix*, 602 P.2d 393, 394 (Cal. 1979)). In order to make this determination, the court must "examine the circumstances of the underlying proceeding." *Id.* "If the circumstances surrounding dismissal are ambiguous on this point, the determination should be left for trial." *Id.* (citing *Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 151 (Vt. 2002)).

The parties have agreed that the charges were "retired" by the Attorney General, but it may be more precise to refer to the disposition as a "diversion."[5] Tennessee law has long recognized "a 'retirement' as a permissible-although somewhat temporary- disposition of a charge." 10 Tenn. Prac. Crim. Prac. & Procedure § 22.36 (2007). This procedure allows for a case to be placed on the "retired docket", with the option to reopen the case if the defendant's conduct warrants it. *Richardson v. State*, 671 S.W.2d 865, 866 (Tenn. App. 1984) ("The record

---

[5]The defendant has asserted, in its Statement of Facts, that the charges were "retired," and the defendant, in her Response, has admitted that fact. (*See* Docket No. 25 at ¶ 2) The only documentary evidence in support of this fact is the Order of Expungement, which, under a box labeled "Disposition Information," states: "Theft (MA) - retired for one year." In that same box, however, on a line labeled "Diversion Date (if applicable)," the date "5-11-05" is written.

7

shows the case against the co-conspirator was placed on the retired docket on motion of the state because of unavailability of evidence at the time the motion was made.").

In addition, the Pretrial Diversion Act, Tenn. Code Ann. § 40-15-101, *et seq.*, provides that a prosecution can be suspended for a maximum of two years upon the agreement of the defendant and the prosecutor. *Id.* at § 40-15-105(a)(1)(A). If the defendant completes the suspension period with no breaches of the agreement, then the charges are formally dismissed. *Id.* at § 40-15-105(e). However, the agreement may be terminated during the suspension period, and the charges reopened. *Id.* at § 40-15-105(d). The Pretrial Diversion Act refers to this process as a "diversion."

The Tennessee courts have not addressed whether a "retirement" or "diversion" constitutes a "final and favorable" termination for the purposes of the initiation of the tolling of the statute of limitation. Other states, however, have found that criminal procedures similar to Tennessee's do not constitute final and favorable terminations. *See, e.g. Van Arsdale v. Caswell*, 311 S.W.2d 404, 408 (Ky. 1958) (the "filing away" of criminal charges is an indefinite continuance, and thus not a final termination necessary to support a malicious prosecution claim). Although Tennessee courts have not addressed this specific issue, at least one Tennessee treatise has noted that "[a] similar result would probably apply in Tennessee since a suit for malicious prosecution requires termination of the criminal proceeding." 10 Tenn. Prac. Crim. Prac. & Procedure § 22.36, n. 4 (2007) (citing *Scheibler v. Steinburg*, 167 S.W. 866 (Tenn. 1914); *State v. Spears*, 780 S.W.2d 766 (Tenn. Crim App. 1989) (noting that placing cases on the "retired docket" was an early form of pretrial diversion and not termination of the proceeding).

During the one-year period during which the plaintiff's case was in "retired" or

8

"diverted" status, her charges could still have been revived. While the Tennessee Supreme Court has held that this "possibility does not preclude finality," it has also instructed that whether or not a termination is final and favorable must be made from existing facts. *Christian*, 833 S.W.2d at 74. The only relevant fact that the defendant has offered regarding the disposition of the plaintiff's criminal charge is that the delay was due to the arresting police officer's military deployment outside of the country. While this may be relevant to whether the disposition was truly "favorable"on the merits of the criminal offense, it has no bearing on whether the plaintiff was still subject to the criminal charges against her being reopened after May 11, 2005. The defendant even admits in its brief that the order on May 11, 2005 "lef[t] open the possibility that the same charges could be reinstated." (Docket No. 13 at p. 10)

As the moving party, the defendant bears the burden of showing that the criminal proceedings against the plaintiff had reached a final termination on May 11, 2005, and the defendant has failed to meet that burden. The court finds that the plaintiff's malicious prosecution claim, for the purposes of this motion, is not time-barred.

### B. Elements of the Malicious Prosecution Claim

Under Tennessee law, a plaintiff must demonstrate three elements to establish a claim for malicious prosecution. The plaintiff "must show (a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005).

The plaintiff has failed to establish a genuine issue of fact as to the final element, that the

9

prior lawsuit terminated in her favor.  The Supreme Court of Tennessee has held that, although "[i]t is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits," nevertheless, "termination must *reflect* on the merits of the underlying action." *Id*. at 531 (emphasis in original).  That is, "the termination must not only be favorable to the [defendant in the underlying proceeding], but must also reflect the merits and not merely [be] a procedural victory." *Id*. at 530 (quoting W. Page Keeton *et al*., *Prosser and Keeton on The Law of Torts*, § 119 (5th ed. 1984); *see also Foshee v. So. Fin. & Thrift Corp*., 967 S.W.2d 817, 819-20 (Tenn. Ct. App. 1997).  In short, "if the reason for dismissal is 'not inconsistent' with a defendant's wrongdoing, it will not be considered a favorable termination." *Id*. (quoting *Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 151 (Vt. 2002)); *see also Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986) (A favorable termination "indicates in some fashion that the accused is innocent of wrongdoing."); *Sewell v. Par Cable, Inc*., 1988 WL 112915 at *3 ("For the purposes of a malicious prosecution action, a favorable termination must be one indicating that the accused is innocent.").

Although Tennessee courts have not directly addressed whether a successful pre-trial diversion amounts to a "favorable determination" for the purposes of a malicious prosecution claim, they have held that successfully diverted charges may be introduced at trial to impeach witnesses.  In *State v. Williams*, 645 S.W.2d 258, 260 (Tenn. Crim. App. 1982), the Tennessee Court of Appeals held that "the diversion act cannot be used to shield a witness from an attack upon their credibility when they are asked about prior bad acts."  In *State v. Dishman*, 915 S.W.2d 458, 464 (Tenn. Crim. App. 1995), the Tennessee Court of Appeals affirmed the rule announced in *Williams*, reasoning that diversion, even when followed by an expungement of the

10

charges, "does not alter the fact that the [witness] may be guilty of a prior bad act." *Williams* and *Dishman* stand strongly for the position that a diversion does not reflect upon the merits of the original criminal charges. *Cf. Schlueter v. Southern Energy Homes, Inc.*, 252 Fed. Appx. 7, 11 (6th Cir. 2007) (finding that a dismissal on speedy trial grounds did not constitute a "final and favorable determination" under Tennessee law); *Union Oil of California Amsco Div. v. Watson*, 468 S.2d 349, 355 n.7 ("A termination not inconsistent with wrongdoing is not the expression of favorable termination which the plaintiff is obligated to show in a malicious prosecution action because it does not reflect on his innocence.").

The only rationale offered by either party for the Attorney General's decision to hold the plaintiff's charges in abeyance was that Detective Robinson was out of the country for an extended period of time, having been deployed to the Middle East. Under the Tennessee Pretrial Diversion Act, other mitigating factors must also have been relevant to this decision.[6] Under either explanation, the decision to retire or divert the case—after which period, the charges would be expunged—did not relate to the merits of the charges themselves. Moreover, the

---

[6]In *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983), the Tennessee Supreme Court outlined the following factors:
> When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

These factors clearly do not relate to the innocence of the accused but, rather, whether the defendant is likely to commit subsequent crimes.

plaintiff has not come forward with any explanation for the diversion. *Cf. Bettis v. Pearson*, 2007 WL 2426404 at *14 (E.D. Tenn. 2007) (finding that, where the Plaintiff had done nothing to explain the circumstances of the dismissal, he had "failed to bear his burden to point to specific facts" as to each element of his malicious prosecution claim); *Sewell*, 1988 WL 112915 at *5 (holding that, where the termination of charges resulted from an agreement between the attorney general and the plaintiff and the plaintiff came forth with no other proof that the charges were dismissed due to his innocence, the plaintiff had not met his evidentiary burden on summary judgment).

The decision to divert the charges was not inconsistent with the defendant's having actually committed the charged offense, and it did not reflect on the merits of the underlying action. The court finds that the plaintiff has failed to establish the final element of her malicious prosecution claim, and that summary judgment must be granted.

## CONCLUSION

For the reasons state herein, the defendant's Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

12

Case 1:07-cv-00024   Document 28   Filed 05/02/08   Page 12 of 12 PageID #: 145